# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| YETI Coolers, LLC,<br><br>    **Plaintiff,**<br><br>    v.<br><br>Ad-N-Art Inc. (CA) d/b/a Asobu, and Ad-N-Art Inc. (US) d/b/a Asobu,<br><br>    **Defendants.** | Case No. 1:18-cv-00514<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:**<br><br>(1) **TRADE DRESS INFRINGEMENT IN VIOLATION OF 15 U.S.C. § 1125(a);**<br>(2) **TRADE DRESS DILUTION IN VIOLATION OF 15 U.S.C. § 1125(c);**<br>(3) **UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN IN VIOLATION OF 15 U.S.C. § 1125(a);**<br>(4) **TRADE DRESS DILUTION IN VIOLATION OF TEX. BUS. & COM. CODE § 16.103;**<br>(5) **COMMON LAW TRADE DRESS INFRINGEMENT;**<br>(6) **COMMON LAW UNFAIR COMPETITION;**<br>(7) **COMMON LAW MISAPPROPRIATION; AND**<br>(8) **UNJUST ENRICHMENT.**<br><br>    **Jury Trial Demanded** |

## COMPLAINT

Plaintiff, YETI Coolers, LLC ("YETI"), for its complaint against Ad-N-Art Inc. (CA) d/b/a Asobu and Ad-N-Art Inc. (US) d/b/a Asobu (collectively "Ad-N-Art"), alleges as follows:

## The Parties

1.     YETI is a company organized and existing under the laws of the State of Delaware with a principal place of business at 7601 Southwest Parkway, Austin, TX 78735.

2.     On information and belief, Ad-N-Art Inc. (CA) d/b/a Asobu is a registered Canadian company that does business in Canada and the United States with a principal place of business at 5760 Andover, Montreal, QC H4T 1H4, Canada, and 178 West Service Road, Champlain, New York 12919, United States.

3.     On information and belief, Ad-N-Art Inc. (US) d/b/a Asobu is a corporation organized and existing under the laws of the State of New York with a principal place of business at 178 West Service Road, Champlain, New York 12919.

## Jurisdiction and Venue

4.     This is a complaint for damages and injunctive relief based on Ad-N-Art's drinkware-related sales and includes multiple grounds for relief including trade dress infringement, trade dress dilution, unfair competition and false designation of origin, misappropriation, and unjust enrichment.  This complaint arises under the Texas Business & Commerce Code; the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq.* ("the Lanham Act"); federal common law; and state common law, including the law of Texas.

5.     This Court has subject matter jurisdiction over this action pursuant to at least 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(a) & (b), and 1367(a).

6.     This Court has personal jurisdiction over Ad-N-Art because, *inter alia*, Ad-N-Art is purposefully and intentionally availing itself of the privileges of doing business in the State of Texas, including in this District.  Among other things, (i) Ad-N-Art has advertised, marketed, promoted, offered for sale, sold, distributed, manufactured, and/or imported, and continues to

advertise, market, promote, offer for sale, sell, distribute, manufacture, and/or import, infringing products to customers and/or potential customers, including in this District, at least through Ad-N-Art's principal web sites, www.adnart.com, www.asobudrinkware.com, and www.asobubottle.com, Home Depot U.S.A., Inc.'s principal web site, www.homedepot.com, and www.amazon.com, (ii) Ad-N-Art's tortious acts giving rise to this lawsuit and harm to YETI have occurred and are occurring in the State of Texas, including in this District, (iii) on information and belief, Ad-N-Art acted with knowledge that their unauthorized use of YETI's rights would cause harm to YETI in the State of Texas and in this District, and (iv) Ad-N-Art's customers and/or potential customers reside in the State of Texas, including in this District.

7.      Alternatively, this Court may exercise personal jurisdiction over Defendants located outside of the United States under Federal Rule of Civil Procedure 4(k)(2).

8.      Venue is proper in this District pursuant to at least 28 U.S.C. §§ 1391(a)-(d).

## General Allegations – YETI's Intellectual Property

9.      For years, YETI has engaged in the development, manufacture, and sale of insulated products, including insulated drinkware. YETI created unique, distinctive, and non-functional designs to use with YETI's insulated drinkware. YETI has extensively and continuously promoted and used these designs for years in the United States and in Texas. Through that extensive and continuous promotion and use, YETI's designs have become well-known indicators of the origin and quality of YETI's insulated drinkware products. YETI's designs also have acquired substantial secondary meaning in the marketplace and have become famous. As discussed in more detail below, YETI owns various rights relating to its insulated drinkware designs, including trade dress rights.

10.     Several years ago, YETI introduced its 30 oz. Rambler® Tumbler and 20 oz.

Rambler® Tumbler into the marketplace (collectively, "Rambler® Drinkware"). YETI has sold millions of the Rambler® Drinkware throughout the United States, including sales to customers in the State of Texas. YETI has invested significant resources in the design, development, manufacture, advertising, and marketing of the Rambler® Drinkware. The designs and features of the Rambler® Drinkware have received widespread and unsolicited public attention. For example, the Rambler® Drinkware have been featured in numerous newspaper, magazine, and Internet articles.

11. The designs of the Rambler® Drinkware are distinctive and non-functional and identify to consumers that the origin of the Rambler® Drinkware is YETI. As a result of at least YETI's continuous and exclusive use of the Rambler® Drinkware, YETI's marketing, advertising, and sales of the Rambler® Drinkware, and the highly valuable goodwill and substantial secondary meaning acquired as a result, YETI owns trade dress rights in the designs and appearances of the Rambler® Drinkware, which consumers have come to uniquely associate with YETI.

12. Exemplary images of a YETI 30 oz. Rambler® Tumbler are shown below:

| Illustration 1:  Exemplary Images of a YETI 30 oz. Rambler® Tumbler. |
| --- |



13.     YETI has trade dress rights in the overall look, design, and appearance of the YETI 30 oz. Rambler® Tumbler, which includes the design and appearance of the curves, tapers, and lines in the YETI 30 oz. Rambler® Tumbler; the design and appearance of the profile of the YETI 30 oz. Rambler® Tumbler; the design and appearance of the walls of the YETI 30 oz. Rambler® Tumbler; the design and appearance of the rim of the YETI 30 oz. Rambler® Tumbler; the design, appearance, and placement of the taper in the side wall of the YETI 30 oz.

Rambler® Tumbler; the design, appearance, and placement of the upper portion, mid portion, and bottom portion of the side wall of the YETI 30 oz. Rambler® Tumbler; the design, appearance, and placement of the style line around the base of the YETI 30 oz. Rambler® Tumbler; the design, appearance, and placement of the tab on the lid of the YETI 30 oz. Rambler® Tumbler; the design, appearance, and placement of the drinking opening on the lid of the YETI 30 oz. Rambler® Tumbler; the design, appearance, and placement of the top plane of the lid of the YETI 30 oz. Rambler® Tumbler; the design, appearance, and placement of the side walls of the lid of the YETI 30 oz. Rambler® Tumbler; the color contrast and color combinations of the YETI 30 oz. Rambler® Tumbler and the tumbler lid of the YETI 30 oz. Rambler® Tumbler; and the relationship of these features to each other and to other features.

14. Exemplary images of a YETI 20 oz. Rambler® Tumbler are shown below:



**Illustration 2: Exemplary Images of a YETI 20 oz. Rambler® Tumbler.**

15.    YETI has trade dress rights in the overall look, design, and appearance of the YETI 20 oz. Rambler® Tumbler, which includes the design and appearance of the curves, tapers, and lines in the YETI 20 oz. Rambler® Tumbler; the design and appearance of the profile of the YETI 20 oz. Rambler® Tumbler; the design and appearance of the walls of the YETI 20 oz.

Rambler® Tumbler; the design and appearance of the rim of the YETI 20 oz. Rambler® Tumbler; the design, appearance, and placement of the taper in the side wall of the YETI 20 oz. Rambler® Tumbler; the design, appearance, and placement of the style line around the base of the YETI 20 oz. Rambler® Tumbler; the design, appearance, and placement of the tab on the lid of the YETI 20 oz. Rambler® Tumbler; the design, appearance, and placement of the drinking opening on the lid of the YETI 20 oz. Rambler® Tumbler; the design, appearance, and placement of the top plane of the lid of the YETI 20 oz. Rambler® Tumbler; the design, appearance, and placement of the side walls of the lid of the YETI 20 oz. Rambler® Tumbler; the color contrast and color combinations of the YETI 20 oz. Rambler® Tumbler and the tumbler lid of the YETI 20 oz. Rambler® Tumbler; and the relationship of these features to each other and to other features.

16. As a result of YETI's exclusive, continuous, and substantial use, advertising, and sales of insulated drinkware products bearing YETI's trade dress and the publicity and attention that has been paid to YETI's trade dress, YETI's trade dress in its 30 oz. Rambler® Tumbler and its 20 oz. Rambler® Tumbler each have become famous and have acquired valuable goodwill and substantial secondary meaning in the marketplace, as consumers have come to uniquely associate YETI's trade dress as source identifiers of YETI.

**General Allegations – Ad-N-Art's Unlawful Activities**

17. Ad-N-Art has purposefully advertised, marketed, promoted, offered for sale, sold, distributed, manufactured, and/or imported, and continues to advertise, market, promote, offer for sale, sell, distribute, manufacture, and/or import products, that violate YETI's rights, including the rights protected by YETI's intellectual property. Ad-N-Art's infringing products

are confusingly similar imitations of YETI's products and are in the same size as YETI's products. Ad-N-Art's actions have all been without the authorization of YETI.

18. Exemplary images of Ad-N-Art's infringing products are shown below:

| Illustration 1:  Exemplary Image of 30 oz. infringing products. |
| :---: |
|  |
| **Illustration 2:  Exemplary Image of 20 oz. infringing products.** |
|  |

19.     As a result of Ad-N-Art's activities related to the infringing products, there is a likelihood of confusion between Ad-N-Art and its products on the one hand, and YETI and its products on the other hand.

20.     YETI used its trade dress extensively and continuously before Ad-N-Art began advertising, promoting, offering to sell, selling, distributing, manufacturing, and/or importing its infringing products.  Moreover, YETI's trade dress became famous and acquired secondary meaning in the United States and in the State of Texas generally and in geographic areas in Texas before Ad-N-Art commenced its unlawful use of YETI's trade dress.

21.     As discussed above and as set forth in the counts below, Ad-N-Art's actions are unfair and unlawful.

## Count I:
## Trade Dress Infringement under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)

22.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 21 as though fully set forth herein.

23.     Ad-N-Art's advertisements, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the infringing products violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by infringing YETI's trade dress.  Ad-N-Art's use of YETI's trade dress and/or colorable imitations thereof is likely to cause confusion, mistake, or deception as to the affiliation, connection, and/or association of Ad-N-Art with YETI and as to the origin, sponsorship, and/or approval of the infringing products, at least by creating the false and misleading impression that the infringing products are manufactured by, authorized by, or otherwise associated with YETI.

24.     YETI's trade dress is entitled to protection under the Lanham Act.  YETI's trade dress includes unique, distinctive, and non-functional designs.  YETI has extensively and

continuously promoted and used its trade dress in the United States. Through that extensive and continuous use, YETI's trade dress has become a well-known indicator of the origin and quality of YETI's products. YETI's trade dress has also acquired substantial secondary meaning in the marketplace. Moreover, YETI's trade dress acquired this secondary meaning before Ad-N-Art commenced its unlawful use of YETI's trade dress in connection with the infringing products.

25.     Ad-N-Art's use of YETI's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's trade dress, YETI's products, and YETI.

26.     On information and belief, Ad-N-Art's use of YETI's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious. Ad-N-Art's bad faith is evidenced at least by the similarity of the infringing products to YETI's trade dress and by Ad-N-Art's continuing disregard for YETI's rights.

27.     YETI is entitled to injunctive relief, and YETI is entitled to recover at least Ad-N-Art's profits, YETI's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

**Count II:**
**Trade Dress Dilution under § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)**

28.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 27 as though fully set forth herein.

29.     Based on the activities described above, including, for example, Ad-N-Art's advertising, marketing, promoting, offering for sale, selling, distributing, manufacturing, and/or importing the infringing products, Ad-N-Art is likely to dilute, has diluted, and continues to

dilute YETI's famous trade dress in violation of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c). Ad-N-Art's use of YETI's trade dress and/or colorable imitations thereof is likely to cause, and has caused, dilution of YETI's famous trade dress at least by eroding the public's exclusive identification of YETI's famous trade dress with YETI and YETI's products, by lessening the capacity of YETI's famous trade dress to identify and distinguish YETI's products, by associating YETI's trade dress with products of inferior quality, and by impairing the distinctiveness of YETI's famous trade dress.

30.     YETI's trade dress is famous and is entitled to protection under the Lanham Act. YETI's trade dress includes unique, distinctive, and non-functional designs. YETI's trade dress has acquired distinctiveness through YETI's extensive and continuous promotion and use of YETI's trade dress in the United States. Through that extensive and continuous use, YETI's trade dress has become a famous well-known indicator of the origin and quality of YETI's products throughout the United States, and is widely recognized by the general consuming public as a designation of the source of YETI and YETI's products. YETI's trade dress has also acquired substantial secondary meaning in the marketplace. Moreover, YETI's trade dress became famous and acquired this secondary meaning before Ad-N-Art commenced its unlawful use of YETI's trade dress in connection with the infringing products.

31.     Ad-N-Art's use of YETI's trade dress and/or colorable imitations thereof has caused, and, unless enjoined, will continue to cause, substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's trade dress, YETI's products, and YETI.

32.     On information and belief, Ad-N-Art's use of YETI's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious. Ad-N-Art's bad faith is evidenced at least by the similarity of the infringing products to YETI's trade dress and Ad-N-Art's continuing disregard for YETI's rights.

33.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least Ad-N-Art's profits, YETI's actual damages, enhanced profits and damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(c), 1116, and 1117.

**Count III:**
**Unfair Competition and False Designation of Origin under § 43(a)**
**of the Lanham Act, 15 U.S.C. § 1125(a)**

34.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 33 as though fully set forth herein.

35.     Ad-N-Art's advertisements, marketing, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the infringing products, in direct competition with YETI, violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and constitute unfair competition and false designation of origin, at least because Ad-N-Art has obtained an unfair advantage as compared to YETI through Ad-N-Art's use of YETI's trade dress and because such use is likely to cause consumer confusion as to the origin, sponsorship, and/or affiliation of Ad-N-Art's infringing products, at least by creating the false and misleading impression that its infringing products are manufactured by, authorized by, or otherwise associated with YETI.

36.     YETI's trade dress is entitled to protection under the Lanham Act. YETI's trade dress includes unique, distinctive, and non-functional designs. YETI has extensively and continuously promoted and used its trade dress in the United States. Through that extensive and continuous use, YETI's trade dress has become a well-known indicator of the origin and quality

of YETI's products. YETI's trade dress has also acquired substantial secondary meaning in the marketplace. Moreover, YETI's trade dress acquired this secondary meaning before Ad-N-Art commenced its unlawful use of YETI's trade dress in connection with the infringing products.

37.     Ad-N-Art's use of YETI's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's trade dress, YETI's products, and YETI.

38.     On information and belief, Ad-N-Art's use of YETI's trade dress and colorable imitations thereof has been intentional, willful, and malicious. Ad-N-Art's bad faith is evidenced at least by the similarity of the infringing products to YETI's trade dress and by Ad-N-Art's continuing disregard for YETI's rights.

39.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least Ad-N-Art's profits, YETI's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

**Count IV:**
**Trade Dress Dilution Under Tex. Bus. & Com. Code § 16.103**

40.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 39 as though fully set forth herein.

41.     Based on the activities described above, including, for example, Ad-N-Art's advertising, marketing, promoting, offering for sale, selling, distributing, manufacturing, and/or importing the infringing products, Ad-N-Art is likely to dilute, has diluted, and continues to dilute YETI's trade dress in violation of § 16.103 of the Texas Business & Commerce Code. Ad-N-Art's use of YETI's trade dress and/or colorable imitations thereof is likely to cause, and

has caused, dilution of YETI's famous trade dress at least by eroding the public's exclusive identification of YETI's famous trade dress with YETI, by lessening the capacity of YETI's famous trade dress to identify and distinguish YETI's products, by associating YETI's trade dress with products of inferior quality, and by impairing the distinctiveness of YETI's famous trade dress.

42.     YETI's trade dress is famous and is entitled to protection under Texas law. YETI's trade dress includes unique, distinctive, and non-functional designs.   YETI has extensively and continuously promoted and used its trade dress in the United States and in the State of Texas.  Through that extensive and continuous use, YETI's trade dress has become a famous well-known indicator of the origin and quality of YETI's products in the United States and in the State of Texas generally and in geographic areas in Texas, and YETI's trade dress is widely recognized by the public throughout Texas and in geographic areas in Texas as a designation of the source of YETI and YETI's products.  YETI's trade dress has also acquired substantial secondary meaning in the marketplace, including in the State of Texas and in geographic areas in Texas.  Moreover, YETI's trade dress became famous and acquired this secondary meaning before Ad-N-Art commenced its unlawful use of YETI's trade dress in connection with the infringing products.

43.     Ad-N-Art's use of YETI's trade dress and/or colorable imitations thereof has caused, and, unless enjoined, will continue to cause, substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's trade dress, YETI's products, and YETI.

44.     On information and belief, Ad-N-Art's use of YETI's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious. Ad-N-Art's bad faith is evidenced at least by the similarity of the infringing products to YETI's trade dress and by Ad-N-Art's continuing disregard for YETI's rights.

45.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least Ad-N-Art's profits, YETI's actual damages, enhanced profits and damages, and reasonable attorney fees under at least Tex. Bus. & Com. Code § 16.104.

### Count V:
### Common Law Trade Dress Infringement

46.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 45 as though fully set forth herein.

47.     Ad-N-Art's advertisements, marketing, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the infringing products, in direct competition with YETI, constitute common law trade dress infringement, at least because Ad-N-Art's use of YETI's trade dress and/or colorable imitations thereof is likely to cause consumer confusion as to the origin, sponsorship, and/or affiliation of its infringing products, at least by creating the false and misleading impression that its infringing products are manufactured by, authorized by, or otherwise associated with YETI.

48.     YETI's trade dress is entitled to protection under the common law. YETI's trade dress includes unique, distinctive, and non-functional designs. YETI has extensively and continuously promoted and used its trade dress in the United States and the State of Texas. Through that extensive and continuous use, YETI's trade dress has become a well-known indicator of the origin and quality of YETI's products. YETI's trade dress has also acquired substantial secondary meaning in the marketplace. Moreover, YETI's trade dress acquired this

secondary meaning before Ad-N-Art commenced its unlawful use of YETI's trade dress in connection with its infringing products.

49.     Ad-N-Art's use of YETI's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's trade dress, YETI's products, and YETI.

50.     On information and belief, Ad-N-Art's use of YETI's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious.  Ad-N-Art's bad faith is evidenced at least by the similarity of its infringing products to YETI's trade dress and Ad-N-Art's continuing disregard for YETI's rights.

51.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least YETI's damages, Ad-N-Art's profits, punitive damages, costs, and reasonable attorney fees.

**Count VI:**
**Common Law Unfair Competition**

52.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 51 as though fully set forth herein.

53.     Ad-N-Art's advertisements, marketing, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the infringing products, in direct competition with YETI, constitute common law unfair competition, at least by palming off/passing off of Ad-N-Art's goods, by simulating YETI's trade dress in an intentional and calculated manner that is likely to cause consumer confusion as to origin, sponsorship, and/or affiliation of Ad-N-Art's infringing products, at least by creating the false and misleading impression that its infringing

products are manufactured by, authorized by, or otherwise associated with YETI. Ad-N-Art has also interfered with YETI's business.

54. YETI's trade dress is entitled to protection under the common law. YETI's trade dress includes unique, distinctive, and non-functional designs. YETI has extensively and continuously promoted and used YETI's trade dress for years in the United States and the State of Texas. Through that extensive and continuous use, YETI's trade dress has become a well-known indicator of the origin and quality of YETI's products. YETI's trade dress has also acquired substantial secondary meaning in the marketplace. Moreover, YETI's trade dress acquired this secondary meaning before Ad-N-Art commenced its unlawful use of YETI's trade dress in connection with its infringing products.

55. Ad-N-Art's use of YETI's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's trade dress, YETI's products, and YETI.

56. On information and belief, Ad-N-Art's use of YETI's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious. Ad-N-Art's bad faith is evidenced at least by the similarity of its infringing products to YETI's trade dress and Ad-N-Art's continuing disregard for YETI's rights.

57. YETI is entitled to injunctive relief, and YETI is also entitled to recover at least YETI's damages, Ad-N-Art's profits, punitive damages, costs, and reasonable attorney fees.

## Count VII:
## Common Law Misappropriation

58.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 57 as though fully set forth herein.

59.     Ad-N-Art's advertisements, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the infringing products, in direct competition with YETI, constitute common law misappropriation.

60.     YETI created the products covered by YETI's trade dress through extensive time, labor, effort, skill, and money. Ad-N-Art has wrongfully used YETI's trade dress and/or colorable imitations thereof in competition with YETI and gained a special advantage because Ad-N-Art was not burdened with the expenses incurred by YETI. Ad-N-Art has commercially damaged YETI, at least by causing consumer confusion as to origin, sponsorship, and/or affiliation of Ad-N-Art's infringing products, by creating the false and misleading impression that their infringing products are manufactured by, authorized by, or otherwise associated with YETI, and by taking away sales that YETI would have made.

61.     YETI's trade dress is entitled to protection under the common law. YETI's trade dress includes unique, distinctive, and non-functional designs. YETI has extensively and continuously promoted and used YETI's trade dress for years in the United States and the State of Texas. Through that extensive and continuous use, YETI's trade dress has become a well-known indicator of the origin and quality of YETI's products. YETI's trade dress has also acquired substantial secondary meaning in the marketplace. Moreover, YETI's trade dress acquired this secondary meaning before Ad-N-Art commenced its unlawful use of YETI's trade dress in connection with its infringing products.

62.     Ad-N-Art's use of YETI's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable commercial injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's trade dress, YETI's products, and YETI. Moreover, as a result of its misappropriation, Ad-N-Art has profited and, unless such conduct is enjoined by this Court, will continue to profit by misappropriating the time, effort, and money that YETI invested in establishing the reputation and goodwill associated with YETI's trade dress, YETI's products, and YETI.

63.     Ad-N-Art's misappropriation of YETI's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious. Ad-N-Art's bad faith is evidenced at least by the similarity of its infringing products to YETI's trade dress and Ad-N-Art's continuing disregard for YETI's rights.

64.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least YETI's damages, Ad-N-Art's profits, punitive damages, costs, and reasonable attorney fees.

**Count VIII:**
**Unjust Enrichment**

65.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 64 as though fully set forth herein.

66.     Ad-N-Art's advertisements, promotions, offers to sell, sales, distribution, manufacture, and/or importing of its infringing products, in direct competition with YETI, constitute unjust enrichment, at least because Ad-N-Art has wrongfully obtained benefits at YETI's expense. Ad-N-Art has also, *inter alia*, operated with an undue advantage.

67.     YETI created the products covered by YETI's trade dress through extensive time, labor, effort, skill, and money. Ad-N-Art has wrongfully used and is wrongfully using YETI's

trade dress, and/or colorable imitations thereof, in competition with YETI, and has gained and is gaining a wrongful benefit by undue advantage through such use. Ad-N-Art has not been burdened with the expenses incurred by YETI, yet Ad-N-Art is obtaining the resulting benefits for its own business and products.

68.     YETI's trade dress is entitled to protection under the common law. YETI's trade dress includes unique, distinctive, and non-functional designs. YETI has extensively and continuously promoted and used YETI's trade dress for years in the United States and the State of Texas. Through that extensive and continuous use, YETI's trade dress has become a well-known indicator of the origin and quality of YETI's products. YETI's trade dress has also acquired substantial secondary meaning in the marketplace. Moreover, YETI's trade dress acquired this secondary meaning before Ad-N-Art commenced its unlawful use of YETI's trade dress and colorable imitations thereof in connection with its infringing products.

69.     Ad-N-Art's use of YETI's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable commercial injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's trade dress, YETI's products, and YETI. YETI accumulated this goodwill and reputation through extensive time, labor, effort, skill, and investment. Ad-N-Art has wrongfully obtained and are wrongfully obtaining a benefit at YETI's expense by taking undue advantage and free-riding on YETI's efforts and investments, and enjoying the benefits of YETI's hard-earned goodwill and reputation.

70. Ad-N-Art's unjust enrichment at YETI's expense has been intentional, willful, and malicious. Ad-N-Art's bad faith is evidenced at least by the similarity of its infringing products to YETI's trade dress and Ad-N-Art's continuing disregard for YETI's rights.

71. YETI is entitled to injunctive relief, and YETI is also entitled to recover at least Ad-N-Art's profits.

### Demand for Jury Trial

YETI hereby demands a jury trial on all issues so triable.

### Relief Sought

WHEREFORE, Plaintiff respectfully prays for:

1. Judgment that Ad-N-Art has (i) infringed YETI's trade dress in violation of § 1125(a) of Title 15 in the United States Code; (ii) diluted YETI's trade dress in violation of § 1125(c) of Title 15 in the United States Code; (iii) engaged in unfair competition and false designation of origin in violation of § 1125(a) of Title 15 in the United States Code; (iv) diluted YETI's trade dress in violation of Tex. Bus. & Com. Code § 16.103; (v) violated YETI's common law rights in YETI's trade dress; (vi) engaged in common law unfair competition; (vii) engaged in common law misappropriation; and (viii) been unjustly enriched at YETI's expense, and that all of these wrongful activities by Ad-N-Art were willful;

2. An injunction against further infringement and dilution of YETI's trade dress, and further acts of unfair competition, misappropriation, and unjust enrichment by Ad-N-Art, and each of its agents, employees, servants, attorneys, successors and assigns, and all others in privity or acting in concert with any of them, including at least from selling, offering to sell, distributing, manufacturing, importing, or advertising the infringing products, or any other

products that use a copy, reproduction, or colorable imitation of YETI's trade dress, pursuant to at least 15 U.S.C. § 1116 and Tex. Bus. & Com. Code § 16.104;

3.    An Order directing Ad-N-Art to recall all infringing products sold and/or distributed and provide a full refund for all recalled infringing products;

4.    An Order directing the destruction of (i) all infringing products, including all recalled infringing products, (ii) any other products that use a copy, reproduction, or colorable imitation of YETI's trade dress in Ad-N-Art's possession or control, (iii) all plates, molds, and other means of making the infringing products in Ad-N-Art's possession, custody, or control, and (iv) all advertising materials related to the infringing products in Ad-N-Art's possession, custody, or control, including on the Internet, pursuant to at least 15 U.S.C. § 1118;

5.    An Order directing Ad-N-Art to publish a public notice providing proper attribution of YETI's trade dress to YETI, and to provide a copy of this notice to all customers, distributors, and/or others from whom the infringing products are recalled;

6.    An Order barring importation of the infringing products and/or colorable imitations thereof into the United States, and barring entry of the infringing products and/or colorable imitations thereof into any customhouse of the United States, pursuant to at least 15 U.S.C. § 1125(b);

7.    An award of Ad-N-Art's profits, YETI's actual damages, enhanced damages, punitive damages, exemplary damages, costs, prejudgment and post judgment interest, and reasonable attorney fees pursuant to at least 15 U.S.C. §§ 1125(a), 1125(c), 1116, and 1117 and Tex. Bus. & Com. Code § 16.104; and

8.    Such other and further relief as this Court deems just and proper.

Dated: June 20, 2018    Respectfully submitted,


By: /s/ Sean J. Jungels

Joseph J. Berghammer (admitted in the Western
District of Texas)
Illinois Bar No. 6273690
jberghammer@bannerwitcoff.com
J. Pieter van Es (admitted in the Western District of
Texas)
Illinois Bar No. 6210313
pvanes@bannerwitcoff.com
Sean J. Jungels (admitted in the Western District of
Texas)
Illinois Bar No. 6303636
sjungels@bannerwitcoff.com
Banner & Witcoff, Ltd.
Ten South Wacker Drive
Suite 3000
Chicago, IL 60606-7407
Telephone: (312) 463-5000
Facsimile: (312) 463-5001

**ATTORNEYS FOR YETI COOLERS, LLC**